STATE OF MONTANA, RESPONDENT, v. MIKE ROLLA, APPELLANT.

[Submitted Nov. 14, 1898.    Decided Dec. 5, 1898.]

*Homicide—Instructions—Self-Defense—Calling Eyewitnesses.*

1. An instruction that it was the duty of accused to "exhaust all other reasonable means within his power consistent with his safety to prevent the homicide" before taking the life of deceased is erroneous, where there is evidence tending to show that the accused was murderously attacked by the deceased and his brother, near defendant's home.

2. An instruction that "the right to take life is limited to the apparent actual and present necessities then suddenly precipitated by the assailant, under such circumstances as then appear to the slayer, as a reasonable man, to place the life or person of the slayer in such peril as to admit of no other reasonable alternative than the killing of the assailant," is erroneous, in that it ignores the right of accused to act on what appeared to him at the time, as a reasonable man, necessary to save his own life, or prevent his receiving great bodily harm, although he was in no actual danger.

3. Where conflicting propositions of law are given to the jury on a material point, one correct, and the other incorrect, the error is fatal.

4. Penal Code, Section 2082, providing that "upon a trial for murder or manslaughter it is not necessary for the state to call as witnesses all persons who were shown to have been present at the homicide, but the court may require all of such witnesses to be sworn and examined," does not make it imperative that all such witnesses should always be introduced by the state, but authorizes the court to require it in its discretion.

5. Under Penal Code, Section 2082, authorizing the court to require all persons who are shown to have been present at a homicide to be called as witnesses by the state, a refusal to order such witnesses placed on the stand, where such refusal is an abuse of the court's discretion is reversible error.

6. Where, after the refusal of the court to require the state to place on the stand certain eyewitnesses of the homicide, the witnesses in question were introduced and fully examined on defendant's behalf, and it is not claimed that the prosecuting attorney acted unfairly in the matter, such refusal by the court worked no prejudice to defendant.

*Appeal from District Court, Park County; Frank Henry, Judge.*

MIKE ROLLA was convicted of murder in the second degree, and appeals.    Reversed.

*Smith & Wilson,* for Appellant.

*C. B. Nolan,* for the State.

PEMBERTON, C. J.—In the month of April of this year the defendant was tried in the district court of Park county, under an information charging him with the crime of murder in the

first degree.   He was convicted of murder in the second de-
gree.   From the judgment, and order of the court refusing a
new trial, this appeal is prosecuted.

The evidence is presented in the record, but there is no
contention that it does not authorize or support the ver-
dict.   The evidence is incorporated in the record for the pur-
pose of illustrating errors assigned in the giving of instruc-
tions by the court.   We shall therefore only refer to the evi-
dence when necessary in the treatment of the case.

The counsel for appellant contends that the court erred in
the giving of instructions to the jury.   The instructions com-
plained of are as follows:   Instruction 6:   "Before a person
is justified in taking the life of his assailant, the slayer must
not only exhaust all other reasonable means within his power
consistent with his safety to prevent the homicide, but it must
clearly appear that the person slain not only had at the time
the apparent present ability, as well as the apparent intention,
to kill or seriously injure the slayer, but that the deceased was
then and there apparently in the act of carrying out his pur-
pose to-wit, the intention of destroying the slayer, or of inflict-
ing upon him serious bodily injury; and even then the law
will not justify the slayer in the use of any more force than is
actually necessary at the time to prevent the deceased from
immediately carrying into effect such unlawful purpose.   By
this instruction the jury will understand that the right to take
life is limited to the apparent actual and present necessities
then suddenly precipitated by the assailant, under such cir-
cumstances as then appear to the slayer, as a reasonable man,
to place the life or person of the slayer in such peril as to ad-
mit of no other reasonable alternative than the killing of the
assailant; and even then the slayer's right to employ force
against the assailant is limited to the force necessary to repel
the violence then being offered, and place himself beyond the
reach of immediate danger."

Instruction 9:   "You are further instructed that, before a
person can justify the taking of human life on the ground of
self-defense, he must, when attacked, employ all reasonable

means within his power, consistent with his safety, to avoid the necessity for the killing."

Instruction 10: "You are further instructed that if you are satisfied from the evidence, beyond a reasonable doubt, that the defendant armed himself with a deadly weapon, and intentionally brought about the fatal meeting, or contributed thereto with the purpose of using his weapon in case of emergency, then the defendant would not be justified upon the grounds of self-defense, and you will bring in your verdict of guilty."

Instruction 11: "You are further instructed that if you find and believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed Servius Cortese, as charged in the information, and that the killing was the result of a sudden, violent impulse or passion, caused by serious and highly provoking injury inflicted upon the defendant at the time by the deceased, which was sufficient in the minds of the jury to cause an irresistible passion in a reasonable person, and the interval of time between the provocation and the killing was not sufficient for the passion to cool, and the voice of reason and humanity to be heard, then the killing was manslaughter, not murder. But if you find from the evidence that a sufficient time had elapsed after the infliction of the injury or insult for the passion to cool, and the voice of reason and humanity to be heard, then the killing was murder."

Instruction 12: "The bare fear of the offense to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of such fears, and not with a spirit of revenge."

Instruction numbered 6 is complained of by counsel as being especially objectionable. It is contended that this instruction goes too far in imposing the obligation upon the accused to "exhaust all other reasonable means within his power consistent with his safety" to prevent the homicide before taking life. Counsel says this instruction required the accused to re-

treat, or disable, or attempt to disable, his assailant, before taking his life.  An inspection of the instruction discloses the fact that the court placed great emphasis upon the obligation of the accused to ''exhaust all other reasonable means within his power consistent with his safety to prevent the homicide.'' This view of the law is pressed upon the jury throughout the instructions.  An instruction of this character was disapproved by the supreme court of California in *People* v. *Ye Park*, 62 Cal. 204.  The court, in the case just cited, says, where a person is attacked with murderous intent, he is under no obligation to fly;. ''he may stand his ground, and, if necessary, kill his adversary.''  In *People* v. *Herbert*, 61 Cal. 544, the court say:  ''Upon the duty to retreat there was a contrariety of opinion by the writers of the common law, and this difference has found its way into the decisions of our states; some, as Alabama and Iowa, holding to the rule that retreat is necessary; others, as Indiana, Michigan and our own state, declaring for the contrary doctrine.  But it is not stating it too strongly to say that the trend of the later judicial decisions is in favor of the latter rule.  So that, while the killing must still be under an absolute necessity, actual or apparent, as a matter of law, that absolute necessity is deemed to exist when an innocent person is placed in such sudden jeopardy.  The right to stand one's ground should form an element of the instructions upon the necessity of killing and the law of self-defense.''

In *Rowe* v. *U. S.*, 164 U. S. 546, 17 Sup. Ct. 172, a case involving the principle under discussion, Mr. Justice Harlan, speaking for the court, says:  ''The accused was entitled, so far as his right to resist the attack was concerned, to remain where he was, and to do whatever was necessary, or what he had reasonable grounds to believe at the time was necessary, to save his life or to protect himself from great bodily harm. And, under the circumstances, it was error to make the case depend in whole or in part upon the inquiry whether the accused could, by stepping aside, have avoided the attack, or could have so carefully aimed his pistol as to paralyze the arm

of his assailant without more seriously wounding him." In the case at bar the accused claims that he was murderously attacked by the deceased and his brother, at or near his own home, and that under such circumstances he was under no legal obligation to fly or retreat. There is evidence in the record tending to support the claim that the accused was so attacked. We are inclined to the opinion that the instructions upon this phase of the case go too far in declaring it the duty of the accused to exhaust all other reasonable means in his power to prevent the homicide before taking the life of the deceased. (*State* v. *McCann* (Wash.) 49 Pac. 216; *People* v. *Hecker* (Cal.) 42 Pac. 307; *Beard* v. *U. S.*, 158 U. S. 550, 15 Sup. Ct. 962; *People* v. *Gonzales* (Cal.) 12 Pac. 783.)

In our opinion, the most serious objection to instruction No. 6 is that part or it which says: "By giving this instruction the jury will understand that the right to take life is limited to the apparent actual and present necessities then suddenly precipitated by the assailant, under such circumstances as then appear to the slayer, as a reasonable man, to place the life or person of the slayer in such peril as to admit of no other reasonable alternative than the killing of the assailant." We think this instruction ignores the right of the accused to act upon what appeared to him at the time, as a reasonable person, necessary to do to prevent death or receiving great bodily harm from the deceased. If it appeared to the accused at the time of the homicide, as a reasonable person, that it was necessary for him to slay his assailant in order to save his own life or prevent receiving great bodily harm, he had a right to act upon such appearances, and slay his assailant, although he was in no actual danger. The right of self-defense is not confined to cases of "apparent actual and present necessities then suddenly precipitated," etc. (*People* v. *Gonzales, supra.*) Such an instruction is misleading, ambiguous and contradictory.

What has been said above is applicable to the other instructions (they being so similar in terms) in so far as they transgress the views expressed in treating instruction No. 6.

It is claimed by the state that, "by other portions of the same instruction, and by instruction No. 28, the jury were specially instructed that the danger need not be real or actual, but only apparent," and that thereby the defect or error in instruction No. 6 was cured. We do not think the authorities support the position of the state. In *Clare* v. *People*, 9 Colo. 122, 10 Pac. 799, it is held that when conflicting propositions of law are given upon a material point, one correct and the other incorrect, the judgment will be reversed. It cannot be assumed in such case that the jury will follow the correct statement of the law. The court, as a general rule, cannot give all the law in a single instruction, and therefore the instructions must be considered all together; and, when so considered, they must correctly state the law, without contradiction. (*Territory* v. *Hart*, 7 Mont. 489, 17 Pac. 718; *Kelley* v. *Cable Co.*, 7 Mont. 70, 14 Pac. 633; *Heilbronner* v. *Lloyd*, 17 Mont. 305, 42 Pac. 853; Sackett's Instructions to Juries, Sec. 25; Thompson on Trials, Secs. 23–26.) The instructions given in the case at bar on the law of self-defense are contradictory, and for that reason fatally erroneous.

The appellant contends that instruction No. 11, in relation to manslaughter, is defective, as it does not properly distinguish manslaughter from self-defense. If there is any error or defect in this instruction, it may be remedied on a new trial by the court following and using the language of the statute defining manslaughter.

The counsel for appellant assigns as error the refusal of the court to require the prosecuting attorney to place upon the stand certain eyewitnesses of the homicide. The prosecuting attorney placed several of the eyewitnesses on the stand, but declined to put others on who had witnessed the tragedy, one or more of whose names were indorsed on the information. Section 2082 of the Penal Code reads as follows: "Upon a trial for murder or manslaughter it is not necessary for the state to call as witnesses all persons who are shown to have been present at the homicide, but the court may require all of such witnesses to be sworn and examined." Counsel contends

that this section does not abrogate the rule on this subject as established by this court in this jurisdiction. The cases decided by this court involving this question were all decided upon and by their own peculiar facts and circumstances. In *Territory* v. *Hanna*, 5 Mont. 248, 5 Pac. 252, the rule is not declared to be imperative. Considering the circumstances of the case, the court said: ''The statement of the prosecuting attorney, in opening the case to the jury, in presence of the court, is an official statement, made under the solemnity of his official oath. In this statement the prosecuting attorney declared to the jury that Hannah Nelson, the wife of the deceased, was present at this homicide. The testimony on the part of the prosecution also showed that she was in a room adjoining that in which the homicide took place, immediately thereafter. Having stated officially to the court and jury that she was present at the homicide, and the proof showing that she was present immediately thereafter, and in all probability at the very act itself, the prosecuting attorney ought to have called this witness, or made some satisfactory explanation to the court why he did not; otherwise a suggestion is raised that there was design and purpose in omitting to call the witness. Especially should she have been called as there was no proof of the circumstances attending the killing in evidence at the time the motion was made.''

If the prosecuting attorney in the case quoted from had made some satisfactory explanation of his refusal to place the eyewitness on the stand, it might have altered the case very materially.

In *State* v. *Russell*, 13 Mont. 164, 32 Pac. 854, this court said that the witness in question was not shown to be an eyewitness. We also said that the rule involved had been extended far enough in the Hanna case. In the case of *State* v. *Metcalf*, 17 Mont. 417, 43 Pac. 182, we said the opinion of the prosecuting attorney that a witness present at the homicide was at that time stupidly drunk was not a sufficient reason for not placing him on the stand. We held that under the circumstances, he being the only witness present, it was the duty

of the prosecutor to place him on the stand, and let the jury determine his condition, and whether he heard or saw anything of the homicide. We also in the Metcalf case, quoted with approval the following language from *Wellar* v. *People*, 30 Mich. 16: ''In cases of homicide, and others where analogons reasons exist, those witnesses who were present at the transaction, or who can give direct evidence on any material branch of it, should always be called, unless, possibly, where too numerous.'' We also said in the Metcalf case: ''We think, under the great weight of authority, that resort should not be had to circumstantial evidence in such cases, when it appears that direct proof can be reasonably had. The best evidence of which the case admits should always be introduced.'' We think the rule announced in these cases is, when properly considered, based upon and supported by the old and fundamental principle that the best evidence of which a case is susceptible should be introduced, or some satisfactory explanation given, whether circumstantial or direct.

We do not think the statute cited above makes it imperative that all the witnesses to a homicide should always be introduced by the state. It gives the court power to require it, if, in its judgment, such course should be pursued.

In *State* v. *Barrett*, 54 Pac. 807, a case involving this question, very recently decided by the supreme court of Oregon, that court said: ''It is true, the prosecuting officer is supposed to be, and should be, wholly without bias or prejudice. His sole duty is to see that the laws are enforced, and the guilty punished. He is as much bound, as the law officer of the state, to protect the innocent as to punish the guilty; and if, therefore, at any time, he should, unmindful of his duty, endeavor to suppress evidence, the trial court would be justified in requiring the production by him of the evidence sought to be suppressed, although it might be more favorable to the defense than to the state; and a refusal to exercise such discretion would probably be ground for reversal. But no such question is presented here. There is no claim that the district attorney was endeavoring to suppress testimony, or to prevent any or all witnesses present at the time of the

commission of the alleged crime from appearing and testifying on the trial. The simple question was whether such witnesses should appear for the state, and thus not only give the defendant the right to cross-examine them, but deny to the state the right of impeaching them if it saw proper, or whether the district attorney might, in his judgment, refuse to call them, and thus compel the defendant to put them on the stand if they were to testify in the case at all. The witnesses were subsequently called by the defense, and testified fully in the case; so that defendant had the full benefit of their testimony, and could not possibly have been injured by the failure of the state to call them in its behalf.''

The circumstances and facts of the case at bar with reference to the action of the prosecuting attorney and the court, and the introduction of the witnesses in question by the defendant after the action of the court, are precisely like those of the Barrett case. We think the action of the court in such case is largely a matter of discretion, especially under Section 2082 of the Penal Code. We think, if a proper case were made requiring the production of all the eye-witnesses to a homicide, and the court should abuse its discretion by refusing to order such witnesses placed upon the stand, it would be reversible error, as stated in the Oregon case, as well as under the section of the penal code quoted above. But, as in the Oregon case, we see no abuse of discretion in the case at bar. It is not pretended that the prosecuting attorney acted unfairly or in bad faith in the matter. Nor do we see how the accused could have been prejudiced by the action of the court, as the witnesses in question were introduced and fully examined on his behalf. What advantage could have accrued to the accused by a cross-examination of these witnesses that he did not obtain by examining them as his own does not appear to us.

We think the judgment should be reversed on account of the errors of the court in giving the instructions, and it is so ordered. The case is remanded for new trial.

*Reversed and remanded.*

HUNT and PIGOTT, JJ., concur.