JUSTICE NELSON,
dissenting.
¶82 Although I agree with much of the Court’s analysis under Issue III, I conclude that the prosecutor’s misstatements of the law during closing arguments and the District Court’s explicit endorsement of those misstatements prejudiced Sanchez’s rights to due process and a fair trial under Article II, Sections 17 and 24 of the Montana Constitution. Accordingly, I conclude that this case should be reversed and remanded for a new trial, and I dissent from the Court’s contrary decision.
¶83 Given this conclusion, a discussion of Issues I, II, and IV is, arguably, unnecessary. Nevertheless, given the importance of the Court’s holdings under Issue II, I write separately to explain my agreement and disagreement with certain points in the Court’s analysis. As for Issues I and IV, I agree with the Court’s resolution of these two issues; however, I write separately to express my disagreement with the approach proposed by Justice Rice’s concurrence for resolving Issue 1.1 first address Issue III, followed by Issue II and, lastly, Issue I.
Issue III
¶84 The role of the prosecutor is unique within the criminal justice system. It is not simply a specialized version of the duty of any attorney not to overstep the bounds of permissible advocacy. See State ex rel. Fletcher v. District Court, 260 Mont. 410, 415, 859 P.2d 992, 995 (1993). Rather, as the Supreme Court explained long ago:
The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and *268 whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935). Accordingly, the prosecutor is required to “execute the duties of his representative office diligently and fairly, avoiding even the appearance of impropriety that might reflect poorly on the state.” Fletcher, 260 Mont. at 415, 859 P.2d at 995 (citation and internal quotation marks omitted). Though he “must diligently discharge the duty of prosecuting individuals accused of criminal conduct, the prosecutor may not seek victory at the expense of the defendant’s constitutional rights.” Fletcher, 260 Mont. at 415, 859 P.2d at 995 (citation and internal quotation marks omitted). Indeed, the prosecutor “is obligated to respect the defendant’s right to a fair and impartial trial in compliance with due process of law.” Fletcher, 260 Mont. at 415, 859 P.2d at 995 (citation and internal quotation marks omitted). Simply stated, “a prosecutor should seek justice and not simply an indictment or a conviction.” Fletcher, 260 Mont. at 415,859 P.2d at 995 (citing Preston v. State, 615 P.2d 594, 601 (Alaska 1980)).
¶85 With these well-settled principles in mind, I agree with the Court’s preliminary analysis under Issue III. In particular, I agree with the Court that § 45-5-103(1), MCA, is unambiguous. Opinion, ¶ 52. Section 45-5-103(1), MCA, provides:
A person commits the offense of mitigated deliberate homicide when the person purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of the explanation or excuse must be determined from the viewpoint of a reasonable person in the actor’s situation. [Emphases added.]
Under the plain language of this statute, the word “reasonable” modifies the defendant’s explanation or excuse for his emotional state, not the defendant’s actions. The statute requires the fact-finder to determine whether the defendant’s explanation or excuse for his extreme mental or emotional stress is reasonable. There is nothing in *269 the statute that requires (or even permits) the jury to determine whether the defendant’s response to the extreme mental or emotional stress was reasonable.
¶86 I also agree with the Court that the prosecutor’s improper closing arguments went far beyond appropriate ad-libbing and that his comments demonstrate a blatant misstatement of § 45-5-103(1), MCA. Opinion, ¶ 54. Indeed, the prosecutor told the jurors-not once, but four times, and even after defense counsel had pointed out that the prosecutor was misstating the law-that they had to determine whether Sanchez’s actions were reasonable. First, the prosecutor argued during his initial closing:
The defense counsel -will argue that this was a reasonable response to extreme emotional distress. You must ask yourself, is it reasonable? Was there extreme-extreme emotional distress? Not just emotional distress but extreme emotional distress and was his reaction reasonable. You can argue until you’re blue in the face and you cannot make this defendant’s actions reasonable under these circumstances.[1] [Emphases added.]
Then, during his rebuttal closing, the prosecutor reiterated these misstatements of the law several more times:
The Court read you the instructions. The reasonableness of the explanation or excuse must be determined from the viewpoint of a reasonable person in the actor’s situation. That is, what would a reasonable person do, not what the defendant did. The evidence in this case shows you it was not reasonable. And if it’s not reasonable, there goes mitigated deliberate homicide.
Defense counsel said this is an extremely difficult case. I would make no comment on that but I will suggest to you, based on your lifetime experiences, was the defendant’s actions reasonable under these circumstances? Your lifetime experiences tell you that relationships come and go, that people get cheated on in their mind, that they are hurt, that they are angry. If it is reasonable then under those circumstances to kill somebody, the streets would be littered with corpses. [Emphases added.]
At this point, defense counsel objected that the prosecutor “is *270 misinterpreting these instructions over and over again.” The court responded: “You may continue with closing. The objection is overruled.” The prosecutor then stated, yet again:
The streets would be littered with corpses if it was reasonable to shoot somebody because they cheated on you and made you angry. Based on your own lifetime experiences you have seen that. You may have been part of it. Did you kill somebody? Did somebody kill you, your friends, other people? No. That answers the question. This is not a reasonable response for a person under these circumstances. [Emphases added.]
¶87 While the Court concludes that these improper statements “tested the boundaries of professional ethics,” Opinion, ¶ 54,1 conclude that the prosecutor crossed those boundaries. Rule 3.1(a)(1) of the Montana Rules of Professional Conduct provides that “[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein . . . without having first determined through diligent investigation that there is a bona fide basis in law and fact for the position to be advocated” (paragraph break omitted). Likewise, Rule 3.3(a)(1) prohibits a lawyer from “knowingly . . . mak[ing] a false statement of ... law to a tribunal or fail[ing] to correct a false statement of... law previously made to the tribunal by the lawyer” (paragraph break omitted). And Rule 4.1(a) prohibits a lawyer from “knowingly . . . mak[ing] a false statement of. . . law to a third person” (paragraph break omitted).
¶88 Here, there is no legal basis for the version of § 45-5-103(1), MCA, argued by the prosecutor during closing arguments. The prosecutor’s statements of the law were patently false.[2] Moreover, as the Court observes, the prosecutor’s comments were not mere inadvertence. Opinion, ¶ 54. As a matter of fact, if we accept that the prosecutor followed his duty under Rule 3.1(a)(1) not to advocate a position *271 “without having first determined through diligent investigation that there is a bona fide basis in law” for that position, then the inference readily drawn from the record before us is that the prosecutor knowingly made false statements of law in violation of Rules 3.3(a)(1) and 4.1(a).
¶89 But it is not necessary to draw such an inference. The proposed jury instruction filed by the prosecutor with respect to the issue of mitigated deliberate homicide establishes that he was fully aware of the law under § 45-5-103(1), MCA. That proposed instruction states:
In order to find the Defendant guilty of the lesser offense of mitigated deliberate homicide, the State must prove the following two propositions:
First, that the Defendant caused the death of Aleasha Chenoweth and
Second, that when the Defendant did so, he acted purposely or knowingly;
Additionally, you must find that at the time the Defendant caused the death of Aleasha Chenoweth, he was acting under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the Defendant’s situation. [Emphasis added.]
The emphasized language is identical to the pertinent language of § 45-5-103(1), MCA. In other words, the prosecutor correctly recited the language of the statute in his proposed jury instruction but went to the jury and argued a completely different-and false-version of the statute. Given these circumstances, I conclude that the prosecutor’s improper closing arguments did not merely “test[] the boundaries of professional ethics,” Opinion, ¶ 54, but instead crossed the boundaries of the Montana Rules of Professional Conduct and violated the prosecutor’s duties and responsibilities set out in Fletcher.[3]
¶90 The Court holds that although the prosecutor improperly stated the law to the jury, Sanchez has not demonstrated that the prosecutor’s misstatements prejudiced his right to a fair and impartial *272 trial. I disagree. The basic premise underlying the Court’s holding is that the District Court provided an unambiguous instruction on mitigated deliberate homicide and the jury followed that instruction. See Opinion, ¶ 58. In this regard, the Court notes that “juries are presumed to follow the law that courts provide.” Opinion, ¶ 57. This presumption is well-established in American jurisprudence, and I do not dispute it. However, I do dispute the Court’s assumption that the jury received an unambiguous instruction on mitigated deliberate homicide.
¶91 Prior to closing arguments, the District Court read Instructions 8 through 19. The instruction on mitigated deliberate homicide (Instruction 17) accurately conveyed § 45-5-103(1), MCA, as follows:
A person commits the offense of Mitigated Deliberate Homicide when the person purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of the explanation or excuse must be determined from the viewpoint of a reasonable person in the actor’s situation.
However, during the prosecutor’s rebuttal closing argument, the following sequence of events occurred:
[THE PROSECUTOR:] Defense counsel said this is an extremely difficult case. I would make no comment on that but I will suggest to you, based on your lifetime experiences, was the defendant’s actions reasonable under these circumstances? Your lifetime experiences tell you that relationships come and go, that people get cheated on in their mind, that they are hurt, that they are angry. If it is reasonable then under those circumstances to kill somebody, the streets would be littered with corpses.
[DEFENSE COUNSEL]: Your Honor, I’m going to have to object because he is misinterpreting these instructions over and over again.
THE COURT: You may continue with closing. The objection is overruled.
By overruling defense counsel’s objection that the prosecutor was misinterpreting the instructions, the District Court effectively endorsed the prosecutor’s statement as to what the jury had to decide-namely, whether Sanchez’s actions were reasonable. Not content to rest on his laurels, however, the prosecutor then proceeded to repeat this misstatement of the law:
[THE PROSECUTOR]: The streets would be littered with *273 corpses if it was reasonable to shoot somebody because they cheated on you and made you angry. Based on your own lifetime experiences you have seen that. You may have been part of it. Did you kill somebody? Did somebody kill you, your friends, other people? No. That answers the question. This is not a reasonable response for a person under these circumstances. This is not extreme emotional distress. Thank you.
Immediately thereafter, the bailiffs were sworn and the jurors began their deliberations.
¶92 It is apparent on this record that the jury received conflicting instructions from the court on mitigated deliberate homicide. Under Instruction 17, which was given before closing arguments, the jury was told to decide whether Sanchez, at the time he caused Aleasha’s death, was under the influence of extreme mental or emotional stress for which there was reasonable explanation or excuse. But under the version of the law provided by the prosecutor near the end of his rebuttal closing argument, the jury was told to decide whether Sanchez’s “actions” themselves were reasonable under the circumstances, i.e., whether killing Aleasha was “a reasonable response for [Sanchez] under these circumstances.” The District Court explicitly endorsed the prosecutor’s incorrect articulation of the law when it overruled defense counsel’s objection that the prosecutor was misinterpreting the instructions.
¶93 A virtually identical situation occurred in State v. Jones, 615 S.W.2d 416 (Mo. 1981), which the Missouri Supreme Court described as follows:
Three things stand out about the argument in this case: First, the prosecutor told the jury [during closing argument] that a “reasonable belief’ satisfied the requirement of proof beyond a reasonable doubt.... Thus, the prosecutor in this case undertook to define reasonable doubt in wholly erroneous terms. Second: The prosecutor’s statement was promptly objected to and the objections were overruled, giving the argument the imprimatur of the trial court. Third: The prosecutor was not content with a passing reference to the subject, but upon the overruling of defense objection, proceeded to repeat his erroneous definition of reasonable doubt.
Jones, 615 S.W.2d at 420 (citations omitted). The court reversed the convictions, noting that while the evidence of guilt was strong, the prosecutor’s misstatements could not be excused as harmless.
¶94 In the case at hand, the Court reasons that the prosecutor *274 informed the jury that the attorneys’ closing arguments were not evidence. Opinion, ¶ 57. But the problem here is not that the prosecutor purported to provide evidence; the problem here is that the prosecutor purported to state the law of mitigated deliberate homicide and the District Court gave the prosecutor’s misstatements the imprimatur of the court. The Court also reasons that the jury was presented with defense counsel’s correct interpretation of the law. Opinion, ¶ 57. But the District Court never endorsed defense counsel’s interpretation of the law; the court only endorsed the prosecutor’s interpretation of the law, which was patently false.
¶95 “American jurisprudence depends on a jury’s ability to follow instructions and juries are presumed to follow the law that courts provide.” Opinion, ¶ 57 (citing State v. Turner, 262 Mont. 39, 55, 864 P.2d 235, 245 (1993), and Opper v. United States, 348 U.S. 84, 95, 75 S. Ct. 158, 165 (1954)). Accordingly, when the trial court imparts conflicting versions of the law and thereby inhibits the jury from correctly following the law, the resulting verdict cannot stand. Indeed, this Court has long recognized that the giving of conflicting jury instructions on a material issue is reversible error. See e.g. State v. Rolla, 21 Mont. 582, 587, 55 P. 523, 525 (1898); Wells v. Waddell, 59 Mont. 436, 443-44, 196 P. 1000, 1002 (1921); Skelton v. Great Northern Ry. Co., 110 Mont. 257, 261, 100 P.2d 929, 931 (1940); Bohrer v. Clark, 180 Mont. 233, 246, 590 P.2d 117, 124 (1978); Swenson v. Buffalo Bldg. Co., 194 Mont. 141, 151, 635 P.2d 978, 984 (1981). In Rolla, the Court observed that “when conflicting propositions of law are given upon a material point, one correct and the other incorrect, the judgment will be reversed. It cannot be assumed in such case that the jury will follow the correct statement of the law.” Rolla, 21 Mont. at 587, 55 P. at 525.
¶96 In the case at hand, the jury unquestionably received conflicting statements as to the law under § 45-5-103(1), MCA: first, the court’s correct instruction that Sanchez’s explanation or excuse for his extreme mental or emotional stress had to be reasonable, and second, the prosecutor’s incorrect statement, which received the imprimatur of the court, that Sanchez’s actions had to be reasonable. Section 45-5-103(1), MCA, carves a fine line-one that is easily capable of being misunderstood by jurors, particularly when they receive conflicting statements as to its meaning. Under these circumstances, the Court’s assumption that the District Court provided an unambiguous instruction on mitigated deliberate homicide is invalid.
¶97 Before concluding, I note that the Court has imposed on Sanchez a virtually insurmountable burden to demonstrate that he was *275 prejudiced by the prosecutor’s misstatements. As the Supreme Court observed in Berger,
the average jury, in a greater or less degree, has confidence that [the obligations to govern impartially and to do justice], which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.
Berger, 295 U.S. at 88, 55 S. Ct. at 633. Along these same lines, we observed in State v. Stringer, 271 Mont. 367, 897 P.2d 1063 (1995), that improper comment by the prosecutor creates an unacceptable risk that jurors will simply adopt the prosecutor’s views instead of exercising their own independent judgment. See Stringer, 271 Mont. at 381, 897 P.2d at 1071. Yet, there is no way that Sanchez can get inside the minds of the jurors in his case to determine whether this occurred-i.e., whether they rendered their verdict based on the law as incorrectly stated by the prosecutor and endorsed by the District Court. Moreover, even if a juror offered insight in this regard, Sanchez is prohibited from using juror testimony or affidavits to impeach a verdict based upon misapprehension of the law. See M. R. Evid. 606(b); State v. Kelman, 276 Mont. 253, 262, 915 P.2d 854, 860 (1996). As it turns out, the District Court’s endorsement of the prosecutor’s incorrect statement of the law establishes, in my view, that Sanchez was deprived of a fair trial and due process of law. But one is left to wonder how Sanchez, under the burden imposed by the Court, otherwise could have demonstrated prejudice as a result of the prosecutor’s misstatements.
¶98 In this regard, I believe that the Court errs in not weighing the prosecutor’s misconduct more heavily in the analysis. By refusing to recognize prejudice to Sanchez, the Court not only affirms the denial of his constitutional rights to due process and a fair trial but also sends the message that there are no adverse consequences to prosecutorial misconduct of this nature. In my view, if a prosecutor knowingly flaunts the Montana Rules of Professional Conduct, repeatedly misrepresents the law to the jury, and blatantly ignores this Court’s admonishment in a prior case not to misstate the law as instructed by the judge (see ¶ 89 n. 3, supra), these factors should be weighed heavily in determining whether the defendant was deprived of a fair trial and due process of law.
¶99 That said, the fact that the District Court imparted conflicting versions of § 45-5-103(1), MCA, to the jury is itself reversible error. If *276 one accepts the premise that a jury which is given conflicting propositions of law cannot correctly follow the law, then the entire foundation of the Court’s resolution of Issue III crumbles, as it should. In light of the prosecutor’s repeated misstatements of the law and the District Court’s endorsement of those misstatements, we simply cannot have confidence that the jury was able to properly consider the lesser included offense of mitigated deliberate homicide. Cf. State v. Rogers, 2001 MT 165, ¶¶ 14-22, 306 Mont. 130, ¶¶ 14-22, 32 P.3d 724, ¶¶ 14-22 (holding that the defendant was prejudiced because the jury’s ability to consider the lesser included offense had not been “maximize[d]”). I conclude that Sanchez’s constitutional rights to a fair trial and to due process of law were clearly violated. I therefore would reverse and remand this case for a new trial. I dissent from our failure to do so.
Issue II
¶100 In Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), the Supreme Court announced a categorical bar to the admission of certain hearsay evidence at a criminal trial. Specifically, the Supreme Court held that under the Sixth Amendment to the United States Constitution, the “testimonial” statement of a witness who is absent from trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. See Crawford, 541 U.S. at 53-54, 68, 124 S. Ct. at 1365, 1374. Although the Supreme Court identified three formulations of what constitutes a testimonial statement, see Crawford, 541 U.S. at 51-52, 124 S. Ct. at 1364, the Supreme Court did not adopt a specific definition, opting instead to define the term on a case-by-case basis, see e.g. Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266 (2006). However, as this Court notes in ¶¶ 34 and 36 of today’s Opinion, the Supreme Court has suggested a number of considerations that are pertinent in determining whether a statement is testimonial-in particular, the statement’s purpose, the statement’s context, and the audience to whom the statement was made. None of these considerations is dispositive; rather, they inform the ultimate question of whether the declarant should have expected, under the circumstances, that the State would use his or her statements at trial. In other words, would a reasonable person in the position of the declarant have objectively foreseen or anticipated that his or statements might be used in the investigation or prosecution of a crime? See United States v. Townley, 472 F.3d 1267, 1272 (10th Cir. 2007), cert. denied,_U.S._, 127 S. Ct. 3069 (2007); United States *277 v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004).
¶101 I agree with the Court’s explanation of these principles in ¶¶ 34 and 36.1 also agree with the Court’s analysis in ¶¶ 37 and 38 of whether the statements contained in Aleasha’s note were testimonial. As the Court observes, the nature of the note was accusatory. It identified Aleasha’s killer and the threatened means of execution, and it stated the exact time and date of Sanchez’s reported threat. It purported to provide “some answers” regarding a crime that would certainly be prosecuted if sufficient evidence, such as the note, were available; and in this sense, the note’s obvious purpose was to speak for Aleasha regarding her unexpected demise should she not be able to speak for herself, i.e., to provide incriminating testimony that Aleasha could not provide in person. It was addressed to a broad audience of persons who might be concerned about Aleasha’s illness or death, and it was placed in a location where law enforcement was likely to find it. Indeed, the detective who found the note testified that he searched Aleasha’s residence because he “felt that it was important to go there to look for any notes or written letters, any diaries, e-mails or just anything that might document some kind of a history,” more specifically, “[a]ny kind of history of threats [being made to Aleasha].” Not surprisingly, when he found the note, he immediately recognized its “evidentiary value.”
¶102 The State contends that Aleasha’s note “does not reasonably purport to show an intent it would be used prosecutorially but only an intent to direct attention (possibly only medical attention) to the reasons for any suspicious illness.” As the Court observes, however, this contention completely ignores the accusatory nature of the note. Moreover, I find it highly implausible that a person who intends to alert medical personnel to the reasons for a suspicious illness would place such information in a pile of correspondence and bills where it is not reasonably likely to be discovered by medical personnel in a timely manner, if at all. In any event, the State’s argument also misapprehends the pertinent inquiry here, which is not what Aleasha specifically intended but, rather, what an objective declarant reasonably would have expected under the circumstances, Opinion, ¶ 36, i.e., whether Aleasha should have understood (whether she actually did or not) at the time she wrote the note that there was a significant probability the statements contained therein would be used prosecutorially. Under the circumstances presented, an objective declarant in Aleasha’s position would have anticipated that the statements contained in the note would be used in the investigation *278 and prosecution of Sanchez.
¶103 Accordingly, I agree with the Court’s analysis and conclusion that Aleasha’s note contained testimonial statements. In addition, I agree with the Court’s conclusion that the rule of forfeiture by wrongdoing applies in this case. However, I do not agree with the Court’s explication of this rule.
¶104 In Crawford, the Supreme Court noted that the rule of forfeiture by wrongdoing is an exception to the Confrontation Clause’s categorical bar against the admission of testimonial statements. See Crawford, 541 U.S. at 62, 124 S. Ct. at 1370. This exception, the Supreme Court noted, extinguishes confrontation claims on essentially equitable grounds. See Crawford, 541 U.S. at 62, 124 S. Ct. at 1370; accord Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, 2280 (2006).
¶105 In Davis, the Supreme Court provided further insight into the scope of the forfeiture-by-wrongdoing exception. Addressing the argument that the nature of the offense charged in that case-domestic violence-required greater flexibility in the use of testimonial evidence against the accused, the Supreme Court noted that this particular type of crime is “notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial” and that when this occurs, “the Confrontation Clause gives the criminal a windfall.” Davis, 126 S. Ct. at 2279-80. Notwithstanding, the Supreme Court held that “[w]e may not, however, vitiate constitutional guarantees when they have the effect of allowing the guilty to go free.” Davis, 126 S. Ct. at 2280.
¶106 At the same time, however, the Supreme Court noted that the rule of forfeiture by wrongdoing may extinguish confrontation claims under certain circumstances:
But when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in Crawford: that the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds. That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.
Davis, 126 S. Ct. at 2280 (ellipsis in original; emphasis, citations, and internal quotation marks omitted).
*279 ¶107 This language-in particular, the Supreme Court’s use of the verb “seek” in conjunction with “undermining] the judicial process” and “destroying] the integrity of the criminal-trial system”-as well as the Supreme Court’s refusal to vitiate the right of confrontation because the charged offense is susceptible to intimidation or coercion of the victim-declarant indicate that the focus of the forfeiture doctrine is not solely on whether the defendant may benefit from his own wrongdoing. In other words, not all conduct by the defendant that happens to result in a witness’s unavailability comes within the doctrine. Rather, the doctrine is directed specifically at conduct by which the defendant “seek[s]” or intends “to undermine the judicial process” or “destroy the integrity of the criminal-trial system” by procuring or coercing silence from witnesses and victims.
¶108 This conclusion is substantiated by the Supreme Court’s observation in Davis that “Federal Rule of Evidence 804(b)(6) . . . codifies the forfeiture doctrine.” Davis, 126 S. Ct. at 2280. Federal Rule 804(b)(6) provides as follows: “The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ... A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness” (emphasis added, paragraph breaks omitted). Again, according to Davis, this is a codification of the forfeiture doctrine, Davis, 126 S. Ct. at 2280; and by its own terms, the doctrine requires an intent to procure the declarant’s unavailability as a witness. Numerous courts have reached the same conclusion. See State v. Romero, 156 P.3d 694, 702 (N.M. 2007) (citing cases, and concluding that the majority rule requires proof of an intent to prevent the declarant from testifying), cert. dismissed,_U.S._, 128 S. Ct. 976 (Jan 11, 2008); see also People v. Stechly, 870 N.E.2d 333, 348-53 (Ill. 2007) (analyzing the forfeiture doctrine and Fed. R. Evid. 804(b)(6) and concluding that intent is an element of the doctrine), rehearing denied (May 29,2007); People v. Moreno, 160 P.3d 242, 246 (Colo. 2007) (noting that “the clear consensus in non-murder cases is that the doctrine requires a showing of an intent on the part of the defendant to prevent the declarant from testifying at trial”), rehearing denied (Jun. 25, 2007); United States v. Gray, 405 F.3d 227, 242 n. 9 (4th Cir. 2005) (“[T]he intent requirement in Rule 804(b)(6) continues to limit application of the forfeiture-by-wrongdoing exception to those cases in which the defendant intended, at least in part, to render the declarant unavailable as a witness against him. Absent such intent, Rule 804(b)(6) has no application.” (citation omitted)).
*280 ¶109 That said, I recognize that a case such as this-where the defendant has admitted to deliberately causing the victim’s death through wrongdoing and, thus, causing the victim’s absence from trial-presents an unusual situation. There is no evidence in the record that Sanchez sought by this action to undermine the judicial process or to destroy the integrity of the criminal-trial system. Indeed, there was no “judicial process” to undermine at the time Sanchez committed the homicide. It would seem, therefore, that the rule of forfeiture by wrongdoing, as articulated in Davis, is inapplicable. On the other hand, had Sanchez merely assaulted Aleasha, and had he then caused her absence from trial by admittedly threatening her, the forfeiture doctrine presumably would have applied. Thus, we would be rewarding defendants who admittedly killed their victims through wrongdoing if we did not apply the same rule to them. To avoid this anomaly, I conclude that where the defendant has admitted to deliberately causing the declarant’s death through wrongdoing, then the forfeiture-by-wrongdoing exception applies to that specific declarant’s out-of-court statements.[4]
¶110 On this basis, I conclude that the admission of Aleasha’s note did not deprive Sanchez of his right of confrontation. He procured Aleasha’s unavailability by fatally shooting her, thereby rendering her unavailable as a witness, and he admitted to having engaged in this wrongdoing deliberately (albeit, with mitigating circumstances).
¶111 The Court reaches the same result; however, in so doing, the Court relies on principles broad enough to suggest that the forfeiture-by-wrongdo ing exception applies irrespective of whether the defendant had an intent to procure the declarant’s -unavailability as a witness. It is on this point that I believe the Court errs.
¶112 Throughout the Court’s discussion in ¶¶ 40 through 46, the Court repeatedly refers to the “equitable basis” of the forfeiture-by-wrongdoing exception and the maxim that “no person should benefit from the person’s own wrongdoing.” Indeed, this maxim is the foundation of the Court’s conclusion that Sanchez forfeited his right to confrontation in this case. See Opinion, ¶¶ 46-47. Yet, while Crawford and Davis refer to the “equitable” basis of the doctrine, neither opinion states that the doctrine applies broadly to prevent a defendant from “benefiting” from his own wrongdoing. Moreover, if the forfeiture-by-wrongdoing exception applied whenever a defendant would otherwise *281 “benefit” from his own wrongdoing-whether or not that wrongdoing was intended to procure a declarant’s unavailability as a witness-then the exception most certainly would swallow the rule. What if the victim-declarant is simply too frightened to face the defendant at trial? Has the defendant then “benefited” from his wrongdoing and thereby forfeited his right to confrontation? It would seem so under the broad language used by this Court.
¶113 The Court’s approach of relying on general maxims and principles of equity contradicts the Supreme Court’s unambiguous statement that “Federal Rule of Evidence 804(b)(6) . . . codifies the forfeiture doctrine,” Davis, 126 S. Ct. at 2280, and the fact that Fed. R. Evid. 804(b)(6) requires an intent to procure the declarant’s unavailability as a witness. The Court seems to dismiss the Supreme Court’s statement in Davis as “primarily dicta,” Opinion, ¶ 42, and to adopt the California Supreme Court’s broad reasoning in People v. Giles, 152 P.3d 433 (Cal. 2007), cert. granted,_U.S._, 128 S. Ct. 976 (Jan. 11, 2008), namely, that “ ‘[a] defendant whose intentional criminal act renders a witness unavailable for trial benefits from his crime if he can use the witness’s unavailability to exclude damaging hearsay statements by the witness that would otherwise be admissible,’ ” Opinion, ¶ 43 (quoting Giles, 152 P.3d at 443). It is imprudent, however, to so readily dismiss the narrow version of the rule suggested in Davis in favor of the broad interpretation offered in GiZes-particularly since we are speaking of a constitutional right and since the result of the Court’s broad, sweeping statements in ¶¶ 40 through 46 to the effect that the doctrine applies to any wrongdoing by a defendant from which he or she happens to “benefit” will most surely be to render that constitutional right subject to exception more often than not. In my view, the defendant’s intent is an element of the forfeiture-by-wrongdoing exception, and the Court errs to the extent it suggests otherwise.
¶114 In sum, I agree with the Court’s analysis and conclusion that Aleasha’s note contained testimonial statements. Furthermore, I agree with the Court that the forfeiture-by-wrongdoing exception applies on the facts of this case. However, I strenuously disagree with the Court’s suggestion in ¶¶ 40-46 that the exception applies whenever a person would otherwise benefit from his or her own wrongdoing.
Issue I
¶115 As noted at the outset, I agree with the Court’s resolution of Issue I. However, because we will, no doubt, confront the matter of *282 adopting the forfeiture-by-wrongdoing exception to the hearsay rules in some other context, I believe that it is appropriate to respond briefly to Justice Rice’s arguments on this point (see Concurrence, ¶¶ 65-68).
¶116 I respectfully disagree that we should adopt this exception to the hearsay rules, either by way of our caselaw or by an amendment to the Rules of Evidence. My rationale is grounded in the nature of hearsay evidence and in the reasons we reject hearsay evidence as a general rule and admit it, as exceptions to the general rule, only under narrowly-defined circumstances. Indeed, if the purpose of our courts is to “search for truth,” Concurrence, ¶ 68, then we ought not to disregard the two elemental principles underpinning the law of hearsay.
¶117 First, as a general rule, “[hjearsay is not admissible except as otherwise provided by statute, these rules, or other rules applicable in the courts of this state.” M. R. Evid. 802 (emphasis added). As noted in the Commission Comments to Rule 802, “the rule that hearsay is inadmissible has been followed in Montana without question since the early case of Davis v. Blume, 1 Mont. 463, 465 (1872).” This broadly-stated prohibition reflects the well-settled view that out-of-court statements are presumptively unreliable, given that the declarant’s perception, memory, and veracity cannot be tested in the presence of the fact-finder while under oath and subject to cross-examination. As explained by the United States Court of Appeals for the Second Circuit:
The hearsay rule is generally said to exclude out-of-court statements offered for the truth of the matter asserted because there are four classes of risk peculiar to this kind of evidence: those of (1) insincerity, (2) faulty perception, (3) faulty memory and (4) faulty narration, each of which decreases the reliability of the inference from the statement made to the conclusion for which it is offered. The hearsay rule ordinarily prohibits the admission of out-of-court statements by declarants on the theory that cross-examination can help test for these four classes of error, thus allowing the fact-finder to weigh the evidence properly and to discount any that is too unreliable.
Schering Corp. v. Pfizer Inc., 189 F.3d 218, 232 (2nd Cir. 1999) (citations omitted); see also United States v. Shukri, 207 F.3d 412, 417 (7th Cir. 2000) (“Hearsay testimony is presumptively unreliable under the common law because the opposing party has no opportunity to cross-examine and test the declarant’s truthfulness under oath before the factfinder.” (citing 5 John H. Wigmore, Evidence in Trials at *283 Common Law § 1368, at 37, § 1420, at 251 (rev. ed. 1974), and McCormick on Evidence § 245, at 728 (Edward W. Cleary ed., 3d ed., 1984))). The opportunity for the fact-finder to weigh the declarant’s sincerity, perception, memory, and narration and to discount any testimony that is too unreliable is lost where that evidence is admitted by way of a third party who simply repeats the declarant’s statements in court.
¶ 118 Second-and this principle follows from the first-the exceptions to the general prohibition against hearsay evidence are grounded in “circumstantial guarantees of trustworthiness,” M. R. Evid. 804(b)(5), i.e., a consensus that out-of-court statements made under certain circumstances are sufficiently reliable to allow their admission notwithstanding the declarant’s absence. See e.g. Commission Comments to M. R. Evid. 803(4) (“The guarantee of trustworthiness [underpinning the statements-for-purposes-of-medical-diagnosis-or-treatment exception] is provided by the patient’s motivation for proper diagnosis and treatment.”); Commission Comments to M. R. Evid. 803(6) (“The guarantee of trustworthiness [underpinning the records-of-regularly-conducted-activity exception] is provided by the nature of the record and the circumstances of preparation, enhanced by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.” (internal quotation marks omitted)); see also Schering Corp., 189 F.3d at 233 (“[T]he trustworthiness of [the traditional exceptions to the hearsay rule] is a function of their ability to minimize some of the four classic hearsay dangers.”).
¶119 In sum, as a general rule, the admission of hearsay evidence is not a reliable and trustworthy vehicle for finding “truth”; rather, this form of evidence frustrates that search, which is why Rule 802 exists in the first place. But we admit certain categories of hearsay testimony where the law has determined, based on historical evidence and practice, that there are circumstantial guarantees of reliability and trustworthiness built into these categories of hearsay testimony and that these types of evidence, therefore, may enhance or further the search for truth.
¶ 120 The forfeiture-by-wrongdoing exception, however, is not based on any notion of reliability or trustworthiness. Indeed, the fact that an actor engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness provides no indication whatsoever as to whether that declarant’s out-of-court *284 statement is reliable or trustworthy. The statement may be true, or it may be a complete fabrication. It may be based on accurate information or on a complete misperception of the events in question. It may be reliable due to one or more of the circumstances that underlie the other exceptions to the hearsay rule, or it may have no independent and inherent indicia of reliability and trustworthiness at all. It might, in the first instance, enhance the search for truth, or it might, in the second, significantly frustrate or obviate that search altogether.
¶121 For these reasons, I disagree that the forfeiture-by-wrongdoing exception serves a role in the “search for truth.” Rather, application of the exception results in a conclusive presumption about the truth of a declarant’s out-of-court statement based solely on the alleged conduct of the accused. More to the point, in most instances, application of the exception is about punishing the alleged conduct for which the actor is on trial and of which he or she is presumed innocent', it has nothing to do with facilitating the search for truth by admitting presumably reliable out-of-court statements.
¶122 We have always examined evidence objected to on hearsay grounds through the lens of circumstantial guarantees of trustworthiness, and it seems dangerous to me to eliminate this perspective for an entire category of statements. Once we discard this analysis for one category of evidence, why not do it for others? I cannot agree with so readily tossing out our historical litmus test.
¶123 Thus, irrespective of Federal Rule of Evidence 804(b)(6),[5] hearsay statements offered in Montana courts against a party who engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness must continue to be evaluated on a case-by-case basis under existing hearsay law. If *285 the statement offered is hearsay, then it should not be admitted absent the statement’s falling under one of those narrow hearsay exceptions that is historically grounded in independent and inherent indicia of reliability and trustworthiness. The rules of evidence must remain a neutral medium which facilitate the search for truth; they must not become instruments of punishment.
Conclusion
¶124 Based on my analysis under Issue III, I conclude that this case should be reversed and remanded for a new trial. I dissent from the Court’s contrary decision. As to Issue II, I agree with the Court’s analysis and conclusion that Aleasha’s note contained testimonial statements, and I agree with the Court that the forfeiture-by-wrongdoing exception applies to Sanchez’s confrontation claims; however, I reach the latter conclusion concerning the applicability of the forfeiture-by-wrongdoing exception on a narrower ground than the rationale underlying the Court’s decision.
JUSTICE COTTER joins in the Dissent of JUSTICE NELSON.

 Not only did the prosecutor misrepresent the law here, he also misrepresented to the jury what defense counsel would argue. Defense counsel argued the reasonableness of Sanchez’s explanation or excuse for his claimed extreme mental or emotional stress, not the reasonableness of Sanchez’s actions under the circumstances.

 Although the State makes no attempt to show that the prosecutor correctly stated the law, the State does argue that the prosecutor’s statements were not improper. The State suggests that the prosecutor merely improvised, resulting in “syntax left imperfect and meaning less than crystal clear.” However, I agree with the Court that the State’s arguments in this regard are incongruous. Opinion, ¶ 54. In fact, the State’s candor to tms Court is questionable in light of its attempt to spin the prosecutor’s misstatements as nothing more than “ambiguous” remarks, “inartfully spoken” and “not exemplars of clarity,” but “fair arguments” if not viewed in “distorted isolation.” These characterizations are disingenuous at best, given that the prosecutor blatantly misrepresented the law, not once, but four times in his two closing arguments. The State legitimately may argue that Sanchez waived his claim of error or was not prejudiced by the prosecutor’s misstatements; but as to those misstatements, the State has an ethical duty to candidly concede obvious prosecutorial misconduct.

 In this regard, I note that in State v. Stewart, 2000 MT 379, 303 Mont. 507, 16 P.3d 391, we chastised this same prosecutor for misrepresenting the State’s burden of proof during voir dire and closing argument. See Stewart, ¶¶ 35-45. We stated that although a prosecutor may comment on the burden of proof as it relates to facts presented in trial, he “may not go outside the record or misrepresent the law as instructed by the judge.” Stewart, ¶ 40 (emphasis added, citation omitted).

 I would not necessarily apply this rule where there is a justifiable use of force defense. But since that is not an issue here, I leave that discussion for another day.

 This Court has long refused to march lock-step with federal interpretations of corresponding constitutional provisions. See e.g. State v. Johnson, 221 Mont. 503, 512-14, 719 P.2d 1248, 1254-55 (1986); Buckman v. Montana Deaconess Hosp., 224 Mont. 318, 324, 730 P.2d 380, 384 (1986); State v. Bullock, 272 Mont. 361, 383-84, 901 P.2d 61, 75-76 (1995); Ranta v. State, 1998 MT 95, ¶ 25, 288 Mont. 391, ¶ 25, 958 P.2d 670, ¶ 25; Woirhaye v. District Court, 1998 MT 320, ¶ 14, 292 Mont. 185, ¶ 14, m972 P.2d 800, ¶ 14. Montana also does not march lock-step with federal procedural and evidentiary rules. See e.g. Table C, Montana Rules of Evidence Differing from Federal Rules of Evidence, Title 26, Chapter 10, MCA (Annotations 2006). Likewise, the mere fact that the federal government has adopted the forfeiture-by-wrongdoing exception in the Federal Rules of Evidence is not itself a principled ground for adopting the exception as part of the Montana Rules of Evidence. Contrary to Justice Rice’s concurrence, this is not to say that “consideration” of the approaches taken by the federal government and our sister states is unprincipled. Concurrence, ¶ 66 n. 1. Rather, it is to say that wholesale adoption of the exception merely because others have done so would be unprincipled.